## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| **BRANDON BLANTON, JAMES** | ) | |
| **HINDMAN, TERRY HINDMAN,** | ) | |
| **DANNY DORVALL, a minor, by and** | ) | **CV-05-08-BLG-RFC** |
| **through his parents and next friends** | ) | |
| **BRAD and TANYA DORVALL, and** | ) | |
| **BRENT BOGGIO, a minor, by and** | ) | |
| **through his parents and next friend,** | ) | |
| **GEARY BOGGIO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| | ) | |
| **DEB BLACK, RANDY ECKER,** | ) | |
| **BRIDGER PUBLIC SCHOOL** | ) | |
| **DISTRICT #2, and BRIDGER SCHOOL** | ) | |
| **BOARD,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### BACKGROUND

On January 12, 2005, Plaintiffs filed suit against Bridger School District, its Board of

Trustees, its then superintendent, Deb Black, and its then teacher, Randy Ecker.  The gravamen

of the complaint is that the defendants caused the plaintiff students to be involved in certain

remodeling projects on the Bridger School campus which exposed the students to asbestos-

containing building materials.  This Court has dismissed the claims against the individual defendants and dismissed the claim for punitive damages.

On February 1, 2005, counsel for Defendants was contacted by Brandon Solari, special agent for the United States Environmental Protection Agency, Criminal Investigation Division, who advised counsel for Defendants that he was conducting an investigation into the events that occurred at Bridger School.

On March 22, 2005, counsel for Defendants was contacted by Mr. Solari, who advised that he was conducting an investigation into whether any criminal violations had occurred at the Bridger School and that he wanted to meet with employees of the District and inspect the campus.  Mr. Solari was advised that the employees in the District were represented by counsel and if he wanted to interview anyone or conduct an investigation, it would have to be cleared through defense counsel who would need to be present.

Subsequently, Mr. Solari and his investigator made several attempts to interview District employees.  Arrangements were also made for Mr. Solari and his team of criminal investigators to inspect the District's property.  Additionally, the District was served with a Federal Grand Jury subpoena pursuant to a Federal Grand Jury conducting an official criminal investigation of a suspected felony.  On July 6, 2005, the defendant School District responded to the Grand Jury subpoena.

On June 17, counsel for Defendants received Plaintiffs' Fed.R.Civ.P. Rule 26(a)(1) initial disclosure, which identified EPA criminal investigator, Brandon Solari, as a person with "information regarding the asbestos contamination and his investigation on behalf of the EPA."

Defendant now move the Court for an order staying all further civil proceedings in this matter until the U.S. Attorney's office declines to prosecute or, in the event of an indictment, further stay the civil matter until final resolution of the criminal proceedings.  Plaintiff opposes staying the case.

## ANALYSIS

When a civil case is pending, a court may, in its discretion, stay civil proceedings when the interest of justice so requires.  *U.S. v. Kordel*, 397 U.S. 1, 10 (1970).  While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution.   *Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989), citing *Securities & Exchange Comm'n v. Dresser Indus.,* 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *see generally United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).   Courts will grant a pre-indictment stay when the civil and criminal proceedings arise from the same factual transaction.  *U.S. v. Certain Parcel of Land, Moulonboro,* 781 F. Supp. 830 (D.N.H. 1992); *United States v. Certain Real Property*, 751 F.Supp. 1060 (E.D.N.Y. 1989).  While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution.  *Securities & Exchange Comm'n v. Dresser Indus.,* 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

"The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned."  *Walsh v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523, 527 (D.N.J. 1998)**,** citing *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989).  Because there is less risk of self-incrimination, and more uncertainty about the

-3-

effect of a delay on the civil case, *pre* indictment requests for a stay are generally denied.  *United States v. Private Sanitation Indus. Ass'n*, 811 F.Supp. 802, 805 (E.D.N.Y. 1992).  However, each case must be evaluated individually.  *Volmar Distributors, Inc. v. New York Post Co.,* 152 F.R.D. 36, 38 (S.D.N.Y. 1993) It is "still possible" to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation.  *Parallel Proceedings*, 129 F.R.D. at 204.  In this case, no indictments have been handed down, but the Government has been conducting an active parallel criminal investigation and has attempted to interview several employees of the school district.  Counsel for Defendants have been advised that Defendants are targets of a criminal investigation.

Where a court must decide whether to stay civil proceedings in the face of parallel criminal proceedings, certain factors serve to guide the court in its decision.  *Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989).  These factors include:

1.  The interest of the plaintiff in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff of a delay;

2.  The burden on the defendant;

3.  The convenience of the court in the management of its cases and the efficient use of judicial resources;

4.  The interest of persons not parties to the civil litigation;

5.  The interest of the public in the pending civil and criminal litigation; and

6.  The extent to which the defendant's fifth amendment rights are implicated.

Each of the foregoing elements is addressed as follows:

1.      **The Interest of the Plaintiff in Proceeding Expeditiously with the Civil Action and the Potential Prejudice to the Plaintiff of a Delay.**

Plaintiffs have an interest in proceeding with their case.  However, the case is still at an early stage and there is currently no scheduling order.  It is unlikely that a stay issued by the Court would infringe upon Plaintiffs' ability to ultimately engage in meaningful discovery.  The absence of prejudice to the Plaintiffs from a delay of the case weighs in favor of a stay.

2.      **The Burden on the Defendant.**

In this case, Defendants will clearly suffer hardships and inequity as a result of simultaneously defending itself in both civil and criminal proceedings.  The issues of both proceedings are substantially similar and Defendants risk incriminating themselves by proceeding with the civil action during the criminal investigation.

3.      **The Convenience of the Court in the Management of its Cases and the Efficient Use of Judicial Resources.**

In *McMullen v. Bay Shrimp Management,* 335 F.3d 215 (3d Cir. 2003), the district court had invoked the sanction of dismissal as a result of plaintiff's proper invocation of his Fifth Amendment rights in a civil case, at a time when the plaintiff had been a named but uncharged co-conspirator in a parallel criminal case.  The appellate court reversed the district court suggesting that a stay of the civil case would have been the preferred response by the district court.  The appellate court reasoned:

> Although promptness in judicial administration is highly desirable, delay may sometimes be necessary to the mission of doing justice.  We are all too often reminded that "justice delayed is justice denied."  But, it is equally true that in some situations "justice rushed is justice crushed."
>
> As the Supreme Court has reminded us, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the

right to defend with counsel an empty formality." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). In a similar vein, we have said, "we are not unmindful of the need for judicial eagerness to expedite cases, to fully utilize the court's time, to reduce overcrowded calenders and to establish finality of judgments. However, these commendable aspirations should never be used to thwart the objectives of the blind goddess." (Citation omitted.)

335 F.3d at 219.

This Court has an interest in resolving cases efficiently. However, without a stay, interrogatory and deposition discovery would likely cause inefficiency because the School District employees and trustees would be forced to assert Fifth Amendment privileges. The Court will be burdened "with deciding a constant stream of privilege issues. . ." *Walsh v. Cristo Property Management, Ltd.,* 7 F.Supp.2d 523, 527-28 (D.N.J. 1998).

**4.    The Interest of Persons not Parties to the Civil Litigation.**

The Court is not aware of any non-parties who have an interest in the civil or criminal proceedings whose interest would be affected by a stay.

**5.    The Interest of the Public in the Pending Civil and Criminal Litigation.**

While the public has an interest in the expeditious administration of justice, no public good would be accomplished by insistence upon expeditiousness at the expense of a justifiable request for delay, especially considering the fact that Defendants herein are a public school, its trustees and staff. Expenditure of scarce public resources to defend litigation on two fronts would not protect the public interest. In fact, the public would benefit by allowing the government to conduct a complete, unimpeded investigation into potential criminal activity. *See Walsh v. Cristo Property Management, Ltd.,* 7 F.Supp.2d 523, 529 (D.N.J. 1998).

6.      **The Extent to Which Defendants' Fifth Amendment Rights are Implicated.**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal

case to be a witness against himself."  The Fifth Amendment not only protects an individual

against being involuntarily called as a witness against himself in criminal prosecution, but also

privileges him not to answer questions that are put to him in any other proceeding, civil or

criminal, formal or informal, when the answer might incriminate him in future criminal

proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).  "[T]o warrant a stay, defendant must

make a strong showing either that the two proceedings are so interrelated that he cannot protect

himself at the civil trial by selectively invoking his Fifth Amendment privilege or that the two

trials will so overlap that effective defense of both is impossible." *Koester v. American Republic*

*Investments, Inc.*, 11 F.3d 818, 827 (8th Cir.1993).

In this case, Defendants face a potential threat to their Fifth Amendment rights by facing

parallel criminal and civil matters.  There appears to be a substantial overlap between witnesses

and documentary evidence as the cases involve the same fact nucleus.  Should Defendants assert

the privilege against self-incrimination, they put themselves at risk of bearing unfavorable

consequences in the civil case.  Further, the claim of privilege will not prevent summary

judgment in the civil case if the litigant does not present sufficient evidence to satisfy the usual

burdens in the litigation.  *See* 8 Wright, Miller & Marcus, *Federal Practice and Procedure*, §

2018 (2d ed. 1994) at 288, which indicates that "[i]n some cases if a party claims the privilege

and does not give his or her own evidence, there will be nothing to support his or her view of the

case and an adverse finding or even a directed verdict or grant of summary judgment will be

proper."  Thus, it is highly likely and probable that the defendants herein will suffer clear

hardship and/or inequity as a result of simultaneously conducting both civil and criminal proceedings.

## CONCLUSION

Based upon the foregoing, it is the finding of this Court that a stay in this case is necessary in order to protect Defendants' Fifth Amendment privilege against self-incrimination, to protect the interests of the public, and to efficiently manage judicial resources.  IT IS HEREBY ORDERED that Defendants' Motion for Stay of Action [*doc. #24*] is GRANTED. This case is stayed for a period of three months.  Defendants may renew their motion for stay at the end of the three month stay.

DATED this 23d day of November, 2005.

\_\_\_\_\_/S/_____

RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
DATE: _____
BY: _____
I hereby certify that a copy of
this Order was mailed to:
Michael Cok, Theodore Dunn
Michael Tolstedt, Jeffrey Weldon